# 18-1862-CV

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

⯈⯇

KATHRYN TOWNSEND GRIFFIN, HELEN MCDONALD,
THE ESTATE OF CHERRIGALE TOWNSEND,

*Plaintiffs-Appellees,*

*v.*

EDWARD CHRISTOPHER SHEERAN, PERSONALLY KNOWN AS ED SHEERAN,
ATLANTIC RECORDING CORPORATION, SONY/ATV MUSIC PUBLISHING, LLC,

*Defendants-Appellees,*

*and*

WARNER MUSIC GROUP CORP., DBA ASYLUM RECORDS,

*Defendant,*

*v.*

STRUCTURED ASSET SALES, LLC,

*Movant-Appellant.*

_____

*On Appeal from the United States District Court
for the Southern District of New York*

## BRIEF FOR MOVANT-APPELLANT

PARNESS LAW FIRM, PLLC
*Attorneys for Movant-Appellant*
136 Madison Avenue, 6th Floor
New York, New York 10016
212-447-5299

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Movant-Appellant Structured Asset Sales, LLC states that it is a Delaware Limited Liability Company. It has no parent company, and no publicly held company holds more than ten percent of its stock.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................iii

PRELIMINARY STATEMENT ..........................................................1

JURISDICTIONAL STATEMENT .....................................................3

ISSUES PRESENTED FOR REVIEW ...............................................4

STATEMENT OF THE CASE............................................................5

STATEMENT OF FACTS ..................................................................6

    A.    *Griffin I* Was Filed in August 2016, but by February 2017 There Was No Active Litigation Involving "Let's Get It On" and "Thinking Out Loud".......................................................6

    B.    *Griffin v. Sheeran* Was Filed in July 2017, but No Public Information About the State of the Case Was Made Available Until March 2018................................................7

    C.    In May 2018, Appellant Requested a Pre-Motion Conference, Following the District Court's Individual Rules and Practices, Which Prohibited Filing a Motion to Intervene .........................................................................9

    D.    The District Court Denied Appellant the Opportunity to Make Its Motion, *Sua Sponte* Deemed It Made, and Denied the "Deemed Made" Motion Without Opportunity to Respond, Argue or Take Any Discovery Whatsoever ..........................12

SUMMARY OF ARGUMENT .........................................................14

ARGUMENT ....................................................................................16

    I.    Standards of Review.............................................................16

    II.    The District Court Committed Reversible Error by Denying Appellant Its Due Process Right to Make Its Motion ...........19

III.    The District Court Erred Because Appellant's Motion Was
        Timely Made ....................................................................................26

IV.     The District Court Erred by Failing to Recognize the
        Prejudice to Appellant ......................................................................32

V.      The District Court's Errors Have Led to Extreme Judicial
        Inefficiencies ....................................................................................34

CONCLUSION ....................................................................................................37

# TABLE OF AUTHORITIES

## CASES

*Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437 (E.D. Pa. 1995) ...........................38

*Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469 (2d Cir. 2010) ........... 18, 36

*Briscoe v. City of New Haven*, No. 3:09-CV-1642 (CSH), 2012 WL 13026762 (D. Conn. Oct. 5, 2012) ..............................................................................................17

*Devlin v. Scardelletti*, 536 U.S. 1 (2002)...................................................................37

*Diversified Grp., Inc. v. Daugerdas*, 217 F.R.D. 152 (S.D.N.Y. 2003) ..................35

*Eisemann v. Greene*, 204 F.3d 393 (2d Cir. 2000) ...................................................25

*Fisher v. U.S.*, 425 U.S. 391 (1976)................................................................... 22, 23

*Griffin v. Sheeran*, 1:16-cv-06309-RJS (S.D.N.Y.)....................................................6

*Griffin v. Sheeran*, 1:17-cv-05221-RJS (S.D.N.Y.)........................................ passim

*In re Best Payphones, Inc.*, 450 F. App'x 8 (2d Cir. 2011) .....................................27

*In re Katz*, 623 F.2d 122 (2d Cir. 1980) ..................................................................22

*In re Martin-Trigona*, 737 F.2d 1254 (2d Cir. 1984) ..............................................24

*Jamie Music Publishing Co. v. Roc-A-Fella Records, LLC*, No. 05 Civ. 9922, 2007 WL 1129333 (S.D.N.Y. 2007) ..............................................................................35

*Johl v. Johl*, 788 F.2d 75 (2d Cir. 1986) (per curiam)..............................................24

*KJ Roberts & Co. v. MDC Partners, Inc.*, 605 F. App'x 6 (2d Cir. 2015) .............27

*Laroe Estates, Inc. v. Town of Chester*, 828 F.3d 60 (2d Cir. 2016), *vacated and remanded sub nom. Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645 (2017).................................................................................................... 23, 32, 34

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015) ....................................................................................................... 25, 26

*Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34 (2d Cir.1995) .................25

*New York News, Inc. v. Kheel*, 972 F.2d 482 (2d Cir. 1992)..................................19

*NMD Interactive, Inc. v. Chertok*, No. 11-CV-6011 (RJS), 2017 WL 993069
 (S.D.N.Y. Mar. 13, 2017), *aff'd sub nom. StreetEasy, Inc. v. Chertok*, 730 F.
 App'x 4 (2d Cir. 2018) ..........................................................................27

*Padovani v. Bruchhausen*, 293 F.2d 546 (2d Cir.1961) .........................................25

*Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647 (2d Cir. 1987) .. 24, 25, 26

*Rothstein v. American International Group, Inc.*, 837 F.3d 195 (2d Cir. 2016) ....37,
 38, 39

*SG Cowen Sec. Corp. v. Messih*, 224 F.3d 79 (2d Cir. 2000) .................................18

*Sims v. Blot*, 534 F.3d 117 (2d Cir. 2008) ........................................................ 18, 36

*Structured Asset Sales, LLC v. Sheeran*, 1:18-cv-05839-RJS (S.D.N.Y.).... 6, 14, 36

*United States v. Demauro*, 581 F.2d 50 (2d Cir. 1978) ..........................................22

*United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968 (2d Cir. 1984)
 ...................................................................................................17

*United States v. Pitney Bowes, Inc.*, 25 F.3d 66 (2d Cir.1994) ...............................19

*United States v. Yonkers Bd. of Educ.*, 801 F.2d 593 (2d Cir. 1986) ......................38

## STATUTES

17 U.S.C. § 501 ..........................................................................................3

28 U.S.C. § 1291 ........................................................................................3

Fed. R. Civ. P. 24 ............................................................................... passim

Fed. R. Civ. P. 24(a)(2).......................................................................... passim

Fed. R. Civ. P. 24(b)(2)....................................................................... 1, 15, 23

## PRELIMINARY STATEMENT

This is an appeal from a decision of the United States District Court for the Southern District of New York, denying the application of Movant-Appellant Structured Asset Sales, LLC ("Appellant" or "SAS") to intervene in the underlying action under Fed. R. Civ. P. 24(a)(2) (intervention of right) and 24(b)(2) (permissive intervention).  While denials of motions to intervene and appeals of same are not particularly unusual, the District Court abused its discretion, denied Appellant of its right to even make the motion, and in doing so deprived Appellant of its due process.  After it erroneously deemed the motion made, the court erroneously denied it as untimely.

The District Court promulgated Individual Rules and Practices that prohibited Appellant from making its motion to intervene in the first instance, required Appellant to proceed with a letter request for a pre-motion conference, barred Appellant from submitting affidavits and exhibits in connection with its pre-motion letter, and barred Appellant from submitting any replies to the submissions of the parties in the case.  A66.[1]  Appellant followed the rules, but rather than giving Appellant an opportunity to be heard, the District Court issued a written Order in which it "deemed" the motion made and then denied it as untimely, using

---

[1] The rules are available from http://www.nysd.uscourts.gov/judge/Sullivan and reproduced at A65-72.  "A" refers to the Joint Appendix.

only the letter submitted by Appellant, and the hearsay-ridden letters submitted by counsel for the Appellees to support its conclusion. A62.

The underlying action concerns allegations that the number one international hit 2014 pop song "Thinking Out Loud," written by Christopher Edward "Ed" Sheeran and Amy Wadge, and performed by Sheeran, infringes the copyright in the 1973 number one Billboard classic song "Let's Get It On," written and produced by Marvin Gaye and Edward Townsend, and recorded and performed by Gaye. The case is being brought by individuals who own two-thirds of the rights to the Townsend portion of the song.

Appellant is the beneficial owner of the remaining one-third of the Townsend share, giving Appellant one-sixth of the total rights. Appellant, just like the Plaintiffs-Appellees in the underlying action, claims that "Thinking Out Loud" infringes the copyright in "Let's Get It On," and seeks damages arising from that infringement. In accordance with the Individual Rules and Practices of the District Court Judge (A66), Appellant filed a pre-motion letter with the District Court requesting a conference, a required prerequisite before a party could file a motion to intervene in the underlying action.

The District Court erred by denying Appellant its procedural due process, despite Appellant's adherence to the District Court's Individual Rules and Practices for motion practice. The District Court did so by *sua sponte* converting

Appellant's request for a pre-motion conference into a motion "deem[ed] made" (A60, A62) and denying the motion without providing Appellant with the opportunity to submit affidavits or additional arguments, conduct any discovery, or engage in any oral argument. A61-62. The District Court erred further by acting on an incomplete record and denying Appellant's motion to intervene as of right, and its motion in the alternative for permissive intervention, relying in substantial part on the hearsay statements of the other counsel in the case to conclude that the "deemed made" motion was not timely.

The judgment of the District Court should be vacated and the case should be remanded to the District Court with instructions that Appellant be allowed to intervene in the underlying action, or in the alternative conduct discovery, submit formal motion papers and engage in oral argument (or at least some of the above) before the District Court.

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction under 17 U.S.C. § 501, *et seq.*, and Fed. R. Civ. P. 24. Final judgment was entered on June 11, 2018. A59. Appellant timely noticed its appeal from the judgment on June 21, 2018. A64. This Court has jurisdiction under 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

Issue 1: Whether, by Order dated June 11, 2018, the District Court *sua sponte* erroneously converted Appellant's request for a pre-motion conference into a motion "deem[ed] made," and denied the motion, without providing Appellant with the opportunity to submit additional argument or conduct any discovery whatsoever, and thus deprived Appellant of its right to due process.

Issue 2: Whether, by Order dated June 11, 2018, the District Court erroneously denied Appellant's motion to intervene as of right in the underlying action as untimely, despite the fact that Appellant is a beneficial owner of the same song that Plaintiffs-Appellees have put at issue in the underlying action, Appellant seeks to bring the same claims against the Defendants-Appellees as Plaintiffs-Appellees have already brought in the underlying action, discovery was ongoing in the underlying action, summary judgment briefing had not been scheduled, and Appellant sought only a modicum of additional expert discovery on an expedited basis, offering to immediately disclose its experts and produce its expert reports within one week.

Issue 3: Whether, by Order dated June 11, 2018, the District Court erroneously denied Appellant's motion for permissive intervention in the underlying action as untimely, despite the fact that Appellant is a beneficial owner of the same song that Plaintiffs-Appellees have put at issue in the underlying action,

Appellant seeks to bring the same claims against the Defendants-Appellees as Plaintiffs-Appellees have already brought in the underlying action, discovery was ongoing in the underlying action, summary judgment briefing had not been scheduled, and Appellant sought only a modicum of additional expert discovery on an expedited basis, offering to immediately disclose its experts and produce its expert reports within one week.

## STATEMENT OF THE CASE

On May 10, 2018, Appellant filed a pre-motion letter with the District Court, in accordance with the District Court's Individual Rules and Practices (A44, 66), seeking a conference to discuss Appellant's planned motion to intervene in the *Griffin v. Sheeran* copyright infringement action. A8; A44-48. The District Court's Individual Rules and Practices specifically prohibited Appellant from making any further submission in support of its pre-motion request. A66 ("No party shall submit a reply letter."). Appellant followed the rules and made no further submission. On June 11, 2018, the District Court issued an Order (A59-63) in which it *sua sponte* converted Appellant's request for a conference into a "deemed made" motion to intervene, and denied that "deemed made" motion as untimely, without providing Appellant any further opportunity to be heard.

Because the District Court denied Appellant's "deemed made" motion to intervene, Appellant initiated a new action in the United States District Court for

the Southern District of New York in which it made the same allegations of copyright infringement as in the pending *Griffin v. Sheeran* case.   A84.   The defendants in *SAS v. Sheeran* and *Griffin v. Sheeran* are identical and they are represented by the same counsel.  A83, 90.  *SAS v. Sheeran* has been designated as related to *Griffin v. Sheeran*, and has been assigned to the same District Court Judge who denied Appellant's "deemed made" motion to intervene.  A83.  The two cases are proceeding separately.

### STATEMENT OF FACTS

A.  *Griffin I* **Was Filed in August 2016, but by February 2017 There Was No Active Litigation Involving "Let's Get It On" and "Thinking Out Loud"**

On August 9, 2016, Kathryn Townsend Griffin, Helen McDonald and Cherrigale Townsend initiated a copyright infringement suit against the Defendants-Appellees and numerous additional defendants in the Federal District Court for the Southern District of New York ("*Griffin I*").[2]  The plaintiffs claimed that Sheeran's "Thinking Out Loud" infringed Gaye and Townsend's "Let's Get It On."  A75.  On August 12, 2016, the plaintiffs filed an Amended Complaint.  A77.  On November 16, 2016, the District Court warned the plaintiffs in *Griffin I* that the case was at risk of being dismissed for failure to serve the defendants.  A78.   On

---

[2] *Griffin v. Sheeran*, 1:16-cv-06309-RJS (S.D.N.Y.).  The docket for *Griffin I* is available on PACER and reproduced at A73-82.

November 28, 2016, the District Court granted the *Griffin I* plaintiffs additional time to serve the defendants. A78. On February 2, 2017, the District Court dismissed *Griffin I* without prejudice against 13 of the defendants, including Defendant-Appellees Sheeran and Sony/ATV Music Publishing, noting that only two defendants – Defendant-Appellee Atlantic Recording Corporation and its parent Warner Music Group Corporation – had been served. A81. On February 3, 2017, those two Defendants-Appellees answered the Amended Complaint. A81. On February 15, 2017, the plaintiffs and those two Defendants-Appellees filed a joint stipulation to dismiss *Griffin I* without prejudice. A81.

Thus, beginning February 2, 2017, there was no pending case against Defendants-Appellees Sheeran and Sony/ATV Music Publishing regarding "Thinking Out Loud" and "Let's Get It On," and by February 15, 2017, there was no active case whatsoever regarding these two works.

**B.** ***Griffin v. Sheeran* Was Filed in July 2017, but No Public Information About the State of the Case Was Made Available Until March 2018**

Some three months later, **and unbeknownst to Appellant**, on July 11, 2017, Kathryn Townsend Griffin, Helen McDonald and The Estate of Cherrigale Townsend (Ms. Townsend had apparently passed away in the interim) initiated a new copyright infringement action in the Federal District Court for the Southern District of New York against Defendants-Appellees, and Warner Music Group Corporation, d/b/a Asylum Records, once again alleging that Sheeran's "Thinking

- 7 -

Out Loud" infringed Gaye and Townsend's "Let's Get It On" ("*Griffin v. Sheeran*").[3] A12-26. On July 22, 2017, the *Griffin v. Sheeran* Plaintiffs-Appellees filed waivers of service, reflecting service of the Complaint on Defendants-Appellees Atlantic Recording Corporation, Edward Christopher Sheeran and Sony/ATV Music Publishing, LLC, and indicating that answers were due September 18, 2017. A4-5. On August 3, 2017, Plaintiffs-Appellees voluntarily dismissed defendant Warner Music Group Corporation. A5.[4] On September 15, 2017, the parties filed a joint stipulation to dismiss three of the claims in the Complaint. A5-6. On September 18, 2017, the three Defendants-Appellees filed answers to the *Griffin v. Sheeran* Complaint. A6.

The District Court cited to two news articles to support its description of *Griffin v. Sheeran* as a "widely-publicized action" (A60), but those hearsay articles – from August 9 and 10, 2016 – are about the original lawsuit that was voluntarily dismissed in February 2017, not the currently-pending action filed in July 2017. There is nothing in the record indicating that Appellant knew that the *Griffin* Plaintiffs-Appellees had filed a **new case** in July 2017.

On October 9, 2017, the District Court entered a Case Management and

---

[3] *Griffin v. Sheeran*, 1:17-cv-05221-RJS (S.D.N.Y.). The docket for *Griffin v. Sheeran* is available on PACER and reproduced at A1-11.

[4] The docket erroneously reflects that Warner Music Group Corporation remains a defendant.

Scheduling Order that, *inter alia*, set June 15, 2018 as the close of all fact and expert discovery in *Griffin v. Sheeran* (A38), and also referred the case to mediation. A39. The mediation referral order indicated that the parties would be ready for mediation by February 2018. A7. The docket next indicates that a mediation session took place on January 19, 2018. A8. On March 13, 2018, Plaintiffs-Appellees' counsel asked for an extension of time on the date by which fact discovery was to be completed, which the Court granted. A8, 41-42. On March 22, 2018, Defendants-Appellees' counsel asked the Court for a further extension of time until April 27, 2018 to complete fact depositions, which the Court also granted. A8, 43. The docket does not give any indication of what – if anything – happened in the case between October 9, 2017 and March 13, 2018, other than the evidently unsuccessful mediation session. Plaintiffs-Appellees' March 13, 2018 letter, in fact, was the first publicly-available information about the status of discovery in the case.

### C. In May 2018, Appellant Requested a Pre-Motion Conference, Following the District Court's Individual Rules and Practices, Which Prohibited Filing a Motion to Intervene

On May 10, 2018 – less than two months after the March 13 letter and well before the June 15, 2018 close of discovery – Appellant filed a pre-motion letter with the District Court, in accordance with the District Court's Individual Rules and Practices (A66), seeking a conference to discuss Appellant's planned motion

to intervene in *Griffin v. Sheeran*. A44-48. In that letter, Appellant indicated that the letter had been preceded by discussions of unspecified duration between Appellant's counsel and counsel for the parties in the case about Appellant's interest in joining the case. A45 ("Plaintiffs' counsel has no objection to the proposed motion….but in the end Mr. Zakarin has indicated that Defendants will oppose it."). Appellant also explained:

> These two months included the time that SAS spent trying to find counsel both willing and able to take on this matter, as well as the time that the undersigned spent getting up to speed on the matter once he and SAS made contact, and reaching out to the parties to seek their consent.

A46, n. 2.

Appellant further told the District Court that for purposes of limiting the impact of its proposed intervention upon *Griffin v. Sheeran*, Appellant did not wish to engage in any additional fact discovery, and sought only the opportunity to use their own experts, providing its reports almost immediately, and giving Defendants-Appellees the full opportunity to examine those experts:

> All deadlines regarding expert discovery to remain unchanged with the following exception: To the extent that a date by which certain categories of experts were required to be disclosed has passed, SAS should be allowed to **immediately disclose its expert(s) if it so chooses, and to serve any reports of said expert(s) within one week of intervention**. Defendants should have as much additional time as they require, if any, to deal with any such additional expert reports.

A44 (emphasis added).

On May 11, 2018, Defendants-Appellees filed a letter in response, indicating their opposition to the proposed motion to intervene based on timeliness, prejudice to Defendants-Appellees, and lack of prejudice to Appellant. Defendants-Appellees told the District Court that discovery was closed and they were poised to move for summary judgment. A49-51. On May 16, 2018, Plaintiffs-Appellees filed their own letter, advising the District Court that it did not object to Appellant's proposed motion to intervene. A52-55. Plaintiffs-Appellees represented to the District Court that there were multiple material open discovery issues that needed to be addressed in *Griffin v. Sheeran* before discovery could be considered closed and the parties could move for summary judgment:

> As might be reasonably gleaned from the foregoing, there are various unresolved evidentiary and/or discovery issues that remain pending at this time. Indeed. as of the drafting of the instant correspondence, the Plaintiffs have proffered expert discovery to the Defendants which remains pending and, in turn, the Defendants, have only within the last day provided the Plaintiffs with a valuation report from a previously-undisclosed financial expert?

> Given the fact of the incomplete proffer of discovery. as well as the troublesome disappearance of the original recording of "Thinking Out Loud" which the Plaintiffs reasonably anticipate asking this Court to address, in conjunction with the fact that this matter has not even been set for a trial date as of yet, the Plaintiffs do not believe that Structured Asset Sales, LLC being afforded leave to enter the case and participate in some measure of limited additional discovery would unduly prejudice any of the parties herein.

A54. On May 17, 2018, Defendants-Appellees submitted yet another letter to the District Court in reply to Appellant's and Plaintiffs-Appellees' letters. A56-58.

The District Court's Individual Rules and Practices specifically prohibited Appellant from making any further submission in support of its pre-motion request. A66 ("No party shall submit a reply letter."). Appellant followed the rules and made no further submission, despite the fact that Defendants-Appellees flouted that same rule. A56-58. The only written or oral submission by Appellant before the District Court was its May 10, 2018 letter seeking a pre-motion conference. A44-48. The District Court thereafter denied Appellant's request for a conference, as discussed below.

**D.   The District Court Denied Appellant the Opportunity to Make Its Motion, *Sua Sponte* Deemed It Made, and Denied the "Deemed Made" Motion Without Opportunity to Respond, Argue or Take Any Discovery Whatsoever**

On June 11, 2018, the District Court issued an Order. A59-63. The District Court noted that Appellant had "submitted a letter to the Court seeking leave to move to intervene in this matter," noting that Plaintiffs-Appellees had filed one, and Defendants-Appellees had filed two, letters in response. The District Court *sua sponte* converted Appellant's request for a conference – made in accordance with the District Judge's rules – into a motion that it "deemed made" and denied it without any further opportunity to Appellant to be heard:

> Based on these submissions. and the fact that additional briefing on the issue is not necessary, the Court deems SAS's contemplated motion to intervene made.
>
> ….

> Because SAS's motion to intervene is clearly untimely, the Court
> deems the motion to be made and denies it.

A60, 62-63.

The District Court explained that it was denying the "deemed made" motion, which was brought under Fed. R. Civ. P. 24(a)(2) and (b)(2), for the sole reason that it was untimely. The District Court laid out its reasoning for that conclusion in a single paragraph of its Order:

> First, SAS is a sophisticated party that, **according to Defendants**, was aware of this dispute (and its interest in this litigation) at least as early as 2016. (Doc. No. 45 at 2.) Indeed, **SAS does not deny such knowledge** and yet offers no explanation for its delay in filing this motion to intervene nearly two years after the original complaint was filed, one year after the commencement of this action, and almost two months after fact discovery ended.
>
> ….
>
> Second…**Plaintiffs intend to use SAS's intervention** as a basis for reopening fact discovery (Doc. No. 46) and SAS itself acknowledges that it would need to file an expert report of its own….
>
> ….
>
> Specifically, **Defendants suggest that they might make the additional affirmative defense** that the statute of limitations has run on SAS's claim….

A62 (emphasis added).

As noted above, the District Court, by operation of its Individual Rules and Practices (A66) and its *sua sponte* decision to convert the request for a pre-motion conference into a "deemed made" motion (A60, 62-63), gave Appellant no

- 13 -

opportunity to respond, in writing or orally, to the arguments raised by Defendants-Appellees regarding timeliness, or by Plaintiffs-Appellees and Defendants-Appellees regarding the state of discovery.

On June 28, 2018, Appellant filed a new complaint in the United States District Court for the Southern District of New York ("*SAS v. Sheeran*") in which it alleged that "Thinking Out Loud" infringed the copyright in "Let's Get It On."[5] Through the filing of an Amended Complaint on July 16, 2018, and a Joint Stipulation filed August 9, 2018, the Defendants-Appellees in *SAS v. Sheeran* are identical to those in *Griffin v. Sheeran*, and are represented by the same counsel as in *Griffin v. Sheeran*. *SAS v. Sheeran* has been designated as related to *Griffin v. Sheeran* and has been assigned to the same District Court Judge who denied Appellant's "deemed made" motion to intervene. A83. The two cases are, however, proceeding separately.

## SUMMARY OF ARGUMENT

The District Court deprived Appellant of its due process when it *sua sponte* converted Appellant's request for a pre-motion conference into a motion "deemed made," without giving Appellant the opportunity to respond in any fashion to the

---

[5] *Structured Asset Sales, LLC v. Sheeran*, 1:18-cv-05839-RJS (S.D.N.Y.). The docket for *SAS v. Sheeran* is available on PACER and reproduced at A83-90. At the time of this writing the *SAS v. Sheeran* docket incorrectly indicated that defendant Ed Sheeran had been terminated, when in fact he had not.

arguments made by Plaintiffs-Appellees in support of, and by Defendants-Appellees in opposition to, that "deemed made" motion. Appellant made the request for a pre-motion conference, rather than a full motion, in compliance with the District Court's Individual Rules and Practices (A44, 66). When the District Court *sua sponte* converted the request for a pre-motion conference into a "deemed made" motion, it deprived Appellant of the opportunity to respond to the unverified statements and arguments of Defendants-Appellees and Plaintiffs-Appellees, and deprived Appellant of the opportunity to take discovery and present evidence to support its position on intervention.

After treating Appellant's request for a pre-motion conference as a motion "deemed made," the District Court erred when it found that motion to be untimely, and on that basis denied the motion to intervene as of right, pursuant to Fed. R. Civ. P. 24(a)(2), and denied the motion for permissive intervention, pursuant to Fed. R. Civ. 24(b)(2). The District Court's determination on timeliness relied almost entirely on unverified hearsay and speculation by Defendants-Appellees' counsel, as well as the District Court's anticipation of what actions Defendants-Appellees and Plaintiffs-Appellees might have taken after a grant of intervention, and not anything that Appellant said it would do, or that the District Court reasonably anticipated Appellant might do. The District Court inequitably applied its own Individual Rules and Practices to deprive SAS of its ability to present its motion to

the court, denying Appellant its due process.

Appellant's "deemed made" motion was in any event timely, because expert discovery had not actually closed at the time Appellant made its request for pre-motion conference, and because there was almost no information available to Appellant as to the state of discovery in the case. Even the prospect of limited additional expert discovery – exactly what Appellant was asking for in connection with its intervention request – does not as a legal matter make a request untimely or unfairly prejudicial to the existing parties to the case. The District Court erred by overstating the legally-cognizable prejudice to Defendants-Appellees if the motion was granted, and by failing to recognize the very real prejudice to Appellant if it was denied.

The District Court's errors combined to create a highly-inefficient procedural posture, in which there are now two nearly-identical cases, making the same allegations of copyright infringement against the same three Defendants-Appellees, all of whom are represented by the same defense counsel, with both cases, formally recognized by the District Court as related, now pending before the same District Judge that denied Appellant's motion for intervention.

## ARGUMENT

### I.    STANDARDS OF REVIEW

The stated rule in the Second Circuit is that a district court's denial of a

motion to intervene is reviewed on an abuse of discretion basis, whether intervention as of right or permissive intervention, although there is some contrary authority among the District Courts of the Circuit. *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 990–91 (2d Cir. 1984); *but see Briscoe v. City of New Haven*, No. 3:09-CV-1642 (CSH), 2012 WL 13026762, at *11 (D. Conn. Oct. 5, 2012) (noting the parties "may take some comfort from the facts that this Ruling and Order allowing intervention as of right is appealable, and the Court of Appeals' standard of review is *de novo*.").

The abuse of discretion standard, as explained by this Court, is by no means a rubber stamp of anything a district court does:

> A district court has abused its discretion if it has (1) "based its ruling on an erroneous view of the law," (2) made a "clearly erroneous assessment of the evidence," or (3) "rendered a decision that cannot be located within the range of permissible decisions." Errors of law or fact may constitute such abuse.

*Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) (reversing denial of motion to intervene upon finding of error of law) (*quoting Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) (internal quotation marks omitted) and *citing SG Cowen Sec. Corp. v. Messih*, 224 F.3d 79, 81 (2d Cir. 2000)).

Whatever standard one applies, the District Court erred when it treated Appellant's pre-motion conference request into a motion "deemed made," despite Appellant's adherence to (and Defendants-Appellees' lack of adherence to) the

District Court's Individual Rules and Practices that prohibited making such a motion before requesting the conference, and it further erred when it concluded incorrectly that the "deemed made" motion to intervene was untimely, based on a very limited record and, in large part, the unverified speculation of counsel to the parties to the case.

Defendants-Appellees will no doubt provide this Court with colorful quotes like "a denial of permissive intervention has virtually never been reversed," *New York News, Inc. v. Kheel*, 972 F.2d 482, 487 (2d Cir. 1992), and "[r]eversal of a district court's denial of permissive intervention is a very rare bird indeed, so seldom seen as to be considered unique." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir.1994). But that is precisely the point – the District Court's denial of Appellant's motion to intervene was unique, like a very rare bird indeed.

Appellant is confident that the Second Circuit has never considered reversing a denial of permissive intervention where – as here – the District Court effectively punished Appellant for following the District Court's requirement that Appellant start with a request for a pre-motion conference, then stripped Appellant of its right to make its motion on a full record, and the opportunity to be heard on that motion. This Court **has** reversed denials of motions to intervene when warranted, and this appeal requires the same result.

- 18 -

## II. THE DISTRICT COURT COMMITTED REVERSIBLE ERROR BY DENYING APPELLANT ITS DUE PROCESS RIGHT TO MAKE ITS MOTION

In or about May 2018, Appellant moved to intervene in *Griffin v. Sheeran*, rather than initiating its own near-identical copyright infringement case against the same Defendants-Appellees, after its efforts to obtain the consent of the parties failed. The District Court's Individual Rules and Practices prohibited Appellant from filing a motion, and required him to make a request for a pre-motion conference:

> For motions other than discovery motions, a pre-motion conference with the Court is required **before making any motion**….
>
> To arrange a pre-motion conference, the moving party shall submit a letter in accordance with Rule 1.A, not to exceed three pages in length, setting forth the basis for the anticipated motion. The letter shall include citations to relevant authority and should provide a brief overview of the anticipated motion. All parties served with the letter must submit a letter response, not to exceed three pages, within three business days from submission of the notification letter. Response letters shall directly address the arguments and authorities set forth in the moving party's letter. **No party shall submit a reply letter. As a general matter, affidavits and exhibits are not permitted in connection with pre-motion letters without prior written request and permission**….

A66, R. 2.A. (emphasis added).

Accordingly, Appellant submitted a letter to the District Court, requesting a pre-motion conference regarding its wish to intervene in the case, and explaining in general its bases under Fed. R. Civ. P. 24(a)(2) and (b)(2). Appellant told the

District Court that it required no additional fact discovery, and a limited amount of expert discovery, in connection with which it was prepared to move forward extremely quickly:

(iii) All deadlines regarding fact discovery to remain unchanged;

(iv) All deadlines regarding expert discovery to remain unchanged with the following exception: To the extent that a date by which certain categories of experts were required to be disclosed has passed, SAS should be allowed to immediately disclose its own expert(s) if it so chooses, and to serve any reports of said expert(s) within one week of intervention. Defendants should have as much additional time as they require, if any, to deal with any such additional expert reports.

A44. Appellant's single letter prompted the submission of three more letters – two from Defendants-Appellees' counsel and one from Plaintiffs-Appellees' counsel. A49-58.

Appellant resisted submitting anything more to the District Court, because the court had admonished litigants that the requested conference was required "before making any motion," and that "[n]o party shall submit a reply letter." A66. Appellant naturally expected that the District Court would actually hold the requested conference, and then allow Appellant to make a full intervention motion, or at a minimum give Appellant the opportunity to be heard and to respond to the unverified statements made by Defendants-Appellees and Plaintiffs-Appellees.

The District Court deprived Appellant of any such opportunity when it issued its June 22, 2018 Order in which it *sua sponte* deemed Appellant's motion

made, and then denied it. The actions of the District Court were particularly unfair because Appellant had proceeded in accordance with the District Court's own Individual Rules and Practices, which prohibited Appellant from making a more formal or more robust submission or replying to those of the others.

What transpired at the District Court in this case is reminiscent of another case in which this Court decided that the district court had failed to provide the appellant the opportunity to make its case for intervention below. In *In re Katz*, 623 F.2d 122 (2d Cir. 1980), this Court reviewed a denial of a motion to intervene, which revolved around whether certain evidence could be privileged. The Court of Appeals explained the mistake of law that the district court made and how it thus abused its discretion:

> The Government also urges that the burden of establishing the existence of the attorney-client relationship and its applicability to the particular circumstances presented is upon the party claiming the privilege. We agree and this court has so held. However, a reading of the transcript of the April 7 hearing reveals that counsel for Jamil was willing to proceed with a factual inquiry having Katz testify as to the claimed privilege. The court nevertheless took the position that since the subpoena had been amended to limit the production to "public documents," they could never be confidential or subject to the privilege. Therefore, **it apparently considered that a factual hearing was unnecessary. Jamil was thus denied the opportunity to satisfy his burden**.

*In re Katz*, 623 F.2d 122, 125 (2d Cir. 1980) (emphasis added) (*citing United States v. Demauro*, 581 F.2d 50, 55 (2d Cir. 1978)). Because of this error, this Court remanded the case:

> In *Fisher* the Court indicated that whether the privilege against self-incrimination attaches is not subject to categorical answers but depends upon the facts and circumstances of each case. **Not knowing the facts or circumstances we accordingly remand** to the district court to make the two pronged inquiry mandated by *Fisher*.

*Id*. at 126 (emphasis added) (*citing Fisher v. U.S.*, 425 U.S. 391, 410 (1976).

More recently, this Court similarly concluded that it had to vacate a denial of a motion to intervene and remand the case because the district court failed to allow for the development of a sufficient factual record on which the Court of Appeals could make a proper determination:

> The Town of Chester argues that Laroe fails this test because its application was untimely, it lacks a separate interest in the proceeding, and any interest it has in the litigation is adequately represented by Sherman's estate. **Because the factual record before us is insufficiently developed at this stage to allow us confidently to resolve these arguments**, we vacate the order and remand to the District Court to determine in the first instance if Laroe satisfies the requirements of Rule 24.

*Laroe Estates, Inc. v. Town of Chester*, 828 F.3d 60, 66 (2d Cir. 2016) (emphasis added), *vacated and remanded sub nom. Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645 (2017) (remanding solely for intervenor's lack of standing). Later in the same opinion, this Court reiterated the ramifications of the errors below:

> As we have observed, Laroe's ability to protect its interest appears likely to be impaired by a judgment on Sherman's takings claim, since Laroe purports to be the equitable owner of that property. **But again, the underdeveloped factual record on appeal makes it difficult for us to determine whether Sherman will adequately represent**

**Laroe's interest** – a question the District Court did not address at all.

*Id*. at 70 (emphasis added).

On several occasions, this Court has considered arguments that a district court's use of its pre-motion conference process had deprived a party of its right to due process. Each of these prior decisions is instructive, and collectively show that in this particular case the District Court abused its discretion. We begin with the following two statements of principle:

> Absent extraordinary circumstances, such as a demonstrated history of frivolous and vexatious litigation, or a failure to comply with sanctions imposed for such conduct, a court has no power to prevent a party from filing pleadings, motions or appeals authorized by the Federal Rules of Civil Procedure.

*Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir. 1987) (*citing In re Martin-Trigona*, 737 F.2d 1254, 1261-62 (2d Cir. 1984) and *Johl v. Johl*, 788 F.2d 75 (2d Cir. 1986) (per curiam)).

> Although we have recognized that "it is within the judge's discretion to hold a pre-motion conference for the purpose of persuading a party not to file a perceived meritless motion," we have made it clear that "the judge may not require that the court's permission be secured at such a conference before a party may file the motion."

*Eisemann v. Greene*, 204 F.3d 393, 397 (2d Cir. 2000) (*quoting Milltex Indus. Corp. v. Jacquard Lace Co*., 55 F.3d 34, 39 (2d Cir.1995)).

Fed. R. Civ. P. 24(a)(2) and 24(b)(2) clearly authorized Appellant to make a motion to intervene, either as of right or permissively. The above statements of

this Court approve of the use of pre-motion conferences, but also presume that the conference will be held, and at the end of the conference the moving party will be allowed to make its motion, even if the District Court advises against it.

Thus, in *Richardson*, this Court determined that when the District Court had failed to schedule a pre-motion conference and thus deprived the litigant of the right to make its motion, it had acted "so 'at odds with the purpose and intent of [the Federal Rules],' as to warrant mandamus relief." *Richardson*, 825 F.2d at 652 (*quoting Padovani v. Bruchhausen*, 293 F.2d 546, 548 (2d Cir. 1961)).

Similarly, in *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015), this Court found that although the district court had held a pre-motion conference, it had abused its discretion in its execution of that function:

> The impropriety occurred not when the district court held the pre-motion conference but when, in the course of the conference, it presented Plaintiffs with a Hobson's choice: agree to cure deficiencies not yet fully briefed and decided or forfeit the opportunity to replead. Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies.

*Id*. at 190.

The case now before the Court is strikingly similar. The District Court required Appellant to request a pre-motion conference, and prohibited Appellant from submitting affidavits, exhibits, or any sort of reply following the submissions of the parties to the case. A66. The court, however, never held the conference

and instead converted the request for a conference into a motion "deemed made" and denied it. *Richardson* tells us that District Court should have held the conference, and *Loreley* instructs us that the District Court should not have deprived Appellant of the safeguards built into the Federal Rules of Civil Procedure.

To be sure, this Court has considered situations when a district court treated a pre-motion conference request as a motion and ruled upon it, but always under circumstances that provided the movant with the opportunity to use reply letters, exhibits or oral arguments, all of which were denied to Appellant. *See KJ Roberts & Co. v. MDC Partners, Inc*., 605 F. App'x 6, 8 (2d Cir. 2015) ("the court deemed eleven letters submitted by the parties on sanctions and two related oral arguments to constitute a duly filed motion, which it then denied on the merits"); *In re Best Payphones, Inc*., 450 F. App'x 8, 15 (2d Cir. 2011) ("the letter consisted of seven single-spaced pages laying out several [arguments]….MetTel filed a response of four single-spaced pages, responding to the merits of Best's sanctions argument and attaching two exhibits, and Best filed a letter in reply."); *NMD Interactive, Inc. v. Chertok*, No. 11-CV-6011 (RJS), 2017 WL 993069, at *3 (S.D.N.Y. Mar. 13, 2017) (indicating moving party's submission of a reply letter, and the court's review of "nearly 500 pages" of documents relating to the motion), *aff'd sub nom. StreetEasy, Inc. v. Chertok*, 730 F. App'x 4 (2d Cir. 2018).

## III. THE DISTRICT COURT ERRED BECAUSE APPELLANT'S MOTION WAS TIMELY MADE

The District Court also abused its discretion through its erroneous application of the facts – and substitution of speculation for facts – when it decided that Appellant's motion was untimely.

First, the District Court engaged in complete speculation by characterizing *Griffin v. Sheeran* as a "widely-publicized action." To support its statement it cited two news articles (A60) but nothing indicating that knowledge of the lawsuit entered the public consciousness in general or Appellant in particular. In addition, the news articles the court cited were from August 9 and 10, 2016 and concern only the **previous** iteration of the *Griffin* lawsuit, which was voluntarily dismissed in February 2017. There is nothing in the record and nothing in the District Court's Order to suggest that the filing of the new case in July 2017 was similarly publicized, and there is certainly no reliable evidence in the record that **Appellant** knew that the case had been refiled. Whether Appellant was aware of the **original** case in 2016 is largely irrelevant to the question of timeliness under Rule 24.

In the alternative, even assuming that Appellant was in fact aware of February 2017 dismissal, Appellant could have taken that as a sign not to move forward with its own efforts, either because there was no case into which to intervene, or because Appellant could have assumed that Defendants-Appellees

had provided the plaintiffs with some sort of information that convinced them not to proceed with the case.

Even if this Court were to assume that Appellant knew about the filing and dismissal of the original *Griffin v. Sheeran* case, and even if this Court were to further assume that Appellant knew of the filing of the current iteration in July 2017, even a careful observer of the docket in that case would find no indication that the case had been progressing as quickly as it apparently was. The docket (A1-11) reflects the following:

> July 11, 2017: Complaint was filed (A3, 12)

> September 18, 2017: Answers were filed, after a stipulated dismissal of three claims (A6, 27)

> October 9, 2018: Case Management Order issued, indicating a June 15, 2018 close of discovery (A7, 38)

> January 19, 2018: Session held with mediator (A8)

> March 13, 2018: Letter from Plaintiffs-Appellees' counsel seeking additional time to complete fact discovery (granted March 14, 2018) (A8, 41)

> March 22, 2018: Letter from Defendants' counsel seeking additional time to complete fact discovery (granted March 22, 2018) (A8, 43)

Between October 9, 2017 and March 13, 2018, there was no public information about the status of the case except that the parties had met with a mediator in January 2018. If an outsider to the case were to ascribe any significance to a docket without any references to discovery issues, and a reference

to a mediation session taking place, it would be as an indication that the parties were focusing on settlement, rather than litigation.

Second, the District Court reached its conclusions about timeliness on a record consisting of a single letter from Appellant, two letters from Defendants-Appellees' counsel (despite the one-letter rule (A66)), and one letter from Plaintiffs-Appellees' counsel, no exhibits or affidavits, and no oral argument.  As discussed above, Appellant maintains that this alone was an abuse of discretion on the part of the District Court warranting reversal.

It is also problematic because of the level to which the District Court relied upon the unverified hearsay of counsel to bolster its own conclusion about timeliness.  Indeed, all three reasons that the District Court provided to support its conclusion were extrapolations of things that the other lawyers had said in their letters:

> None of the timeliness factors favors SAS. First, SAS is a sophisticated party that, **according to Defendants**, was aware of this dispute (and its interest in this litigation) at least as early as 2016. (Doc. No. 45 at 2.) Indeed, SAS does not deny such knowledge and yet offers no explanation for its delay in filing this motion to intervene nearly two years after the original complaint was filed, one year after the commencement of this action, and almost two months after fact discovery ended.

> Second, intervention would prejudice Defendants, since it appears that **Plaintiffs intend to use SAS's intervention** as a basis for reopening fact discovery (Doc. No. 46), and SAS itself acknowledges that it would need to file an expert report of its own in order to respond to the months-old expert reports already exchanged between Plaintiffs

and Defendants (Doc. No. 43). Forcing the Court and the parties to retrace steps in a scheduling order issued nearly eight months ago is clearly prejudicial and, when considered in light of SAS's delay, unjustified (Doc. No. 32.) By contrast, SAS also does not identify any prejudice that it would face should the motion be denied. Finally, the Court concludes that certain additional circumstances counsel against intervention in this case.

Specifically, **Defendants suggest that they might make the additional affirmative defense** that the statute of limitations has run on SAS's claim, which would spawn further motion practice that would be irrelevant to the current litigation, which, as discussed, is already nearing the final stages of discovery. (Doc. No. 45 at 3.)

A62 (emphasis added).

The District Court's first reason was based on Defendants-Appellees' counsel's hearsay depiction of Appellant as a sophisticated party and his recitation of prior interactions with Appellant's principal. Because the District Court's Individual Rules and Practices prohibited submission of reply papers, exhibits or affidavits, Appellant had no opportunity to respond to the statements of Defendants-Appellees' counsel. The District Court's assertion that "SAS does not deny such knowledge and yet offers no explanation for its delay" is particularly galling because the District Court barred Appellant from responding in any way, and thus denied Appellant the opportunity to admit or deny the hearsay allegations about its knowledge, or to provide any additional explanations in response.

The District Court's second reason revolved around the court's belief that Plaintiffs-Appellees would seek to take advantage of Appellant's intervention to

seek additional discovery.  Plaintiffs-Appellees' counsel's letter (A52-55) does not support this conclusion, would be hearsay if it did, and in any event Appellant cannot be held responsible for what the other parties to the case might do down the road.  The District Court's third reason likewise accepts as fact Defendants-Appellees' counsel's statement that they might move to dismiss Appellant's claims if it were allowed to intervene.  Neither of these reasons are a basis to find Appellant's request to intervene to be untimely.[6]

As this Court has said, the timeliness factor looks at prejudice arising from the timing of the filing of the motion, not the effects of the motion if granted:

> While both arguments may explain how the Town is prejudiced by Laroe's **participation** in the litigation, neither shows how it would be prejudiced by Laroe's **delay** in filing its motion to intervene – our only concern on timeliness under Rule 24.

*Laroe Estates, Inc. v. Town of Chester*, 828 F.3d 60, 67 (2d Cir. 2016) (emphases in original).

---

[6] Moreover, the statute of limitations defense is a red herring, as it ignores the black-letter separate accrual rule, and three-year "lookback" principle, which operate together as follows: "[W]hen a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete "claim" that "accrue[s]" at the time the wrong occurs. In short, each infringing act starts a new limitations period…..Thus, when a defendant has engaged (or is alleged to have engaged) in a series of discrete infringing acts, the copyright holder's suit ordinarily will be timely under § 507(b) with respect to more recent acts of infringement (*i.e.*, acts within the three-year window), but untimely with respect to prior acts of the same or similar kind." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1969-70 (2014).

If Defendants-Appellees moved to dismiss SAS's claims upon intervention at this stage of the case, they would surely have made the same motion at any other point in the case. Any delay arising from Defendants-Appellees' imagined reaction to Appellant joining the case is not properly tied to the timing of the motion but rather the motion itself, and is irrelevant for purposes of deciding whether to allow Appellant to intervene.

Third, expert discovery had not even closed at the time Appellant made the court aware that it wished to intervene, and it wished only to engage in additional expert discovery, not fact discovery, and on an accelerated schedule. Appellant's pre-motion letter was filed May 10, 2018 (A44), and expert discovery was not scheduled to close until June 15, 2018. A38. Appellant thus indicated that as part of its request to intervene it would seek no additional fact discovery, and a modicum of additional expert discovery. To that end, and with timeliness firmly in mind, Appellant offered to disclose its experts immediately, and provide their reports within one week. A44.

Finally, Appellant asks the Court to recognize that copyright infringement cases in general, and this subset of copyright infringement cases in particular, are extraordinarily complex cases requiring detailed analysis and warrant the substantive involvement of multiple experts in advance of even filing suit, a process that can involve months simply securing the right experts, and many more

months to complete the analysis.  Appellant also asks the Court to recognize that securing suitable counsel who is in a position to bring such a case is another significant challenge to a litigant in Appellant's position, and that these factors should be considered when reviewing the determination as to whether Appellant's motion was timely or not.

## IV.   THE DISTRICT COURT ERRED BY FAILING TO RECOGNIZE THE PREJUDICE TO APPELLANT

In its Order, the District Court also spoke in passing about the relative prejudice to Appellant and Defendants-Appellees, writing:

> Forcing the Court and the parties to retrace steps in a scheduling order issued nearly eight months ago is clearly prejudicial and, when considered in light of SAS's delay, unjustified.  (Doc. No. 32.) By contrast, SAS also does not identify any prejudice that it would face should the motion be denied.

A62.

As discussed herein, there is no cognizable harm to Defendants-Appellees arising from the timing of the motion, and the impact of a timely-made motion on the case is not properly taken into consideration.  *Laroe Estates, Inc. v. Town of Chester*, 828 F.3d 60, 67 (2d Cir. 2016).  As for the prejudice to Appellant, Appellant explained to the District Court that it would suffer prejudice not only because it would have to initiate and litigate a new, duplicative action against the same Defendants-Appellees, represented by the same lawyers, over the same facts and issues (which it has now commenced), but also because its fractional rights to

the copyright could very well be affected by what happens in the *Griffin v. Sheeran* litigation.

Appellant cited the analysis of now-retired Magistrate Judge James Francis in *Jamie Music Publishing Co. v. Roc-A-Fella Records, LLC*, No. 05 Civ. 9922, 2007 WL 1129333 (S.D.N.Y. 2007), as highly applicable to this case. A47. In *Jamie*, the magistrate judge determined that the proposed intervenor had a "direct interest in the purported copyright infringement because she claims to be the sole author of the Composition and the owner of its copyright," that the intervenor "raises the same copyright infringement claims against the defendant Universal Music Group, Inc. as do the plaintiffs," and "should not require extensive additional discovery." *Id.*, 2007 WL 1129333 *2-3.

Most importantly, that court also concluded that "there is no reason to believe that Ms. Mason's concerns are coextensive with those of the plaintiffs such that her interests would be adequately represented by plaintiffs' counsel." *Id.*, 2007 WL 1129333 *2 (*citing Diversified Grp., Inc. v. Daugerdas*, 217 F.R.D. 152, 156 (S.D.N.Y. 2003)). In that case, where the court appears to have allowed the intervenor to make her motion, the court concluded that it could not guarantee that the rights of one party who believed herself to be the copyright owner would necessarily be protected by an equally-motivated party who also believed itself to be the owner.

The same logic extends here, and is made stronger by the fact that the District Court denied Appellant the right to make any formal motion, submit any evidence or affidavits, or present oral argument. The District Court's implicit conclusion that Appellant would be protected by counsel for the Plaintiffs-Appellees in *Griffin v. Sheeran* is without basis, and simply wrong.

## V. THE DISTRICT COURT'S ERRORS HAVE LED TO EXTREME JUDICIAL INEFFICIENCIES

As noted above, abuse of discretion can be found in errors of law, errors of fact, or where a District Court "rendered a decision that cannot be located within the range of permissible decisions." *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) (*quoting Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) (internal quotation marks omitted). The District Court's denial of Appellant's motion to intervene led directly to Appellant filing a new complaint – *SAS v. Sheeran* – making the same claims of copyright infringement as in *Griffin v. Sheeran*, and which is now pending against the exact same Defendants-Appellees who are represented by the same counsel, before the same District Court Judge who denied the intervention motion, and which has been formally marked as related to the original case.

If the District Court had allowed Appellant to intervene on the terms Appellant requested – in May 2018 – Appellant would have disclosed its infringement experts **immediately** and those experts' reports **within a week**, as

offered in Appellant's pre-motion conference request letter (A44), a short period of additional expert discovery would have ensued, delaying the filing of Defendants-Appellees' motions for summary judgment by no more than two or three months. *See* A10 (noting due dates of July 27, August 28 and September 18, 2018 for summary judgment briefs in *Griffin v. Sheeran*).

Just two years ago, this Court specifically cautioned the Circuit's lower courts "to be mindful when dismissing similar motions to intervene on timeliness grounds lest the courts invite needless litigation into their courtrooms."  *Rothstein v. American International Group, Inc*., 837 F.3d 195, 205 (2d Cir. 2016).  To be clear, in *Rothstein* the Court was saying that if District Courts construed the timeliness factor too strictly, it could lead to overuse of Rule 24:

> Fearful that the district court would find their motions to intervene untimely, virtually "all class members would be forced to intervene to preserve their claims, and one of the major goals of class action litigation – to simplify litigation involving a large number of class members with similar claims – would be defeated."  Unnecessary intervention by any putative class member with the slightest doubt that they might be excluded from the settlement class would only increase the "extraordinary amount of judicial and private resources ... [of] massive class action litigation."

*Id*. (*quoting Devlin v. Scardelletti*, 536 U.S. 1, 10 (2002), and *Austin v. Pa. Dep't of Corr*., 876 F. Supp. 1437, 1455 (E.D. Pa. 1995)).

The Court of Appeals was particularly concerned about the dangers of denying motions to intervene based on timeliness, even through the lens of the

abuse of discretion standard:

> [A]lthough "[t]he timeliness requirement" of intervention "is flexible and the decision is one entrusted to the district judge's sound discretion, we think it important to address the possible **troubling consequences of the district court's holding that the Plans should have moved to intervene "at least as early as the filing of the Third Amended Complaint**."

*Id.* (emphasis added) (*citing United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 594-95 (2d Cir. 1986) (*quoting* record on appeal). In *Rothstein*, the case was initiated October 15, 2004 and the Third Amended Complaint was filed December 15, 2006 – over two years later.[7]

The principles of *Rothstein* apply here as well. Only <u>seven months</u> elapsed between the *Griffin* Case Management Order and Appellant's pre-motion conference request. A7, 44. During those seven months, there was no publicly-available information about the progress of the case until Defendants-Appellees filed a letter in March 2018 updating the district court regarding discovery. A41. This is a far cry from the twenty-six months that elapsed in *Rothstein*, and the 308 entries filed to the docket in that case during those two years. If this Court was concerned with the overuse of the timeliness factor *Rothstein*, it should have similar concerns here.

---

[7] The *Rothstein* Original Complaint and Third Amended Complaint can be accessed through PACER (Second Circuit docket nos. 14-4067(L) and 14-4603(con)).

The *Griffin v. Sheeran* District Court states that its decision turned entirely on the basis of timeliness (A61), in Applicant's view incorrectly and based on an incomplete factual record. That denial not only "invited," but led directly and unavoidably, to duplicative litigation in the same courtroom that denied the motion. Appellant urges this Court to reverse and remand this case for the very same principles it explained two years ago in *Rothstein*.

## CONCLUSION

For all of the foregoing reasons, the District Court's June 12, 2018 Order should be vacated, and the case remanded with appropriate instructions to the District Court to allow Applicant to intervene in the underlying matter as of May 10, 2018, or at a minimum conduct further proceedings to allow Applicant the full opportunity to make its motion to intervene.

August 30, 2018                                   Respectfully submitted,

                                        _____/s/_____
                                        HILLEL I. PARNESS
                                        PARNESS LAW FIRM, PLLC
                                        136 Madison Ave., 6th Floor
                                        New York, New York 10016
                                        (212) 447-5299
                                        hip@hiplaw.com
                                        *Counsel for Movant-Appellant*
                                        *Structured Asset Sales, LLC*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Circuit Rule 32(a), I hereby certify that the foregoing brief was produced using the Times New Roman 14-point typeface and contains 9,015 words.

_____/s/_____
Hillel I. Parness
